**FEGERT, INC., a Nevada corporation, Plaintiff,**

v.

**CHASE COMMERCIAL CORPORATION, a Delaware corporation, Defendant.**

**No. CV–R–83–419–ECR.**

United States District Court, D. Nevada.

June 21, 1984.

Richard J. Matthews, Elko, Nev., for plaintiff.

Lionel, Sawyer & Collins by Mark A. Solomon, Las Vegas, Nev., for defendant.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Defendant has moved the Court, pursuant to Fed.R.Civ.P. 12(b)(2), for an order dismissing the action on the ground that the Court lacks in personam jurisdiction. The complaint alleges tortious interference by Defendant with a contract between Plaintiff and Freeport Gold Company (Freeport), and also tortious interference with a prospective contractual relationship between them.

Defendant, through the affidavit of its Assistant Treasurer, Lonnie Powers, declares that it is a Delaware corporation that neither promotes nor transacts business in Nevada. Further, it has no office, resident agent or answering service in this State.

On December 31, 1980, Defendant financed the purchase of six pieces of excavating and earth-moving equipment by E.R. Fegert, Inc. On March 11, 1983, Defendant sued that company in Washington and, on April 11, 1983, was awarded a partial summary judgment establishing Defendant's right to foreclose on the equipment. By then, the equipment was in Nevada and being used in connection with Freeport's gold mining operation. Defendant chose to sue E.R. Fegert, Inc. in a Nevada state court, initiating a claim and delivery suit on April 18, 1983. A writ was obtained from that Court and, on April 21, 1983, the Sheriff of Elko County, Nevada, repossessed the equipment and turned it over to Defendant. E.R. Fegert, Inc. then filed a Chapter 11 petition in bankruptcy in the Eastern District of Washington. On May 5, 1983, the Bankruptcy Court issued a turnover order that required Defendant immediately to return the equipment to E.R. Fegert, Inc. The order, as clarified by an amended order dated August 8, 1983, provided protection for Defendant by specifying, among other things, that Defendant should be paid $41,000 per month and that E.R. Fegert, Inc. should provide Defendant with an assignment executed by Plaintiff Fegert, Inc., whereunder the payments due Plaintiff from Freeport under a rental agreement would be paid to Defendant. The rental agreement covered the same equipment mentioned hereinabove, as Plaintiff was then renting it from E.R. Fegert, Inc., for use in the Freeport operations.

Defendant, in April 1983, retained law firms in Elko and in Las Vegas, Nevada, to

initiate and prosecute the lawsuit against E.R. Fegert, Inc., in the Nevada state court. After the Bankruptcy Court's turnover order, the Elko law firm was asked by Defendant to monitor the monthly payments due to Defendant under the order. Accordingly, the law firm telephoned and corresponded with Freeport officials in Nevada at least twenty times between July and December 1983. In addition, some seven payment checks from Freeport were delivered to that law firm, which forwarded them to Defendant.

The affidavits on file herein further reveal that a refinancing agreement between Defendant and E.R. Fegert, Inc., was negotiated and executed in Reno, Nevada, on September 29, 1982. Defendant was represented by its Vice President and Operations Manager, Robert Aubrecht. Barry L. Nettles, Defendant's Assistant Treasurer and Western Region Collection Manager, had inspected the equipment in Nevada in the Spring of 1982.

The complaint herein alleges that Defendant (and its parent corporation) repeatedly harassed and pressured Freeport concerning the monthly payments. As a result, Freeport purportedly ceased making early payments to Plaintiff, as had been its custom. The resulting cash flow problems allegedly caused Plaintiff to be unable to maintain and keep all its equipment working. This made Freeport apprehensive as to Plaintiff's ability to perform, according to the complaint and affidavits, so that a contract that would have gone to Plaintiff was awarded by Freeport to another company instead.

 Whether this district court has personal jurisdiction over Defendant is determined by the law of Nevada, the forum state. *See Hunt v. Erie Ins. Group,* 728 F.2d 1244, 1246 (9th Cir.1984). This requires an applicable State statute that potentially confers jurisdiction over the nonresident defendant and a determination as to whether assertion of jurisdiction would comport with due process principles. *Kransco Mfg., Inc. v. Markwitz,* 656 F.2d 1376, 1377 (9th Cir.1981). Nevada has a

long-arm statute, NRS 14.065, which assumes jurisdiction over out-of-state defendants as to any cause of action arising from the commission of a tortious act within the State. Since the complaint contends that Defendant herein committed two torts within Nevada, the statute is potentially applicable.

Defendant's activities within Nevada have not been shown to be so substantial or continuous and systematic that general jurisdiction (even over claims for relief unrelated to its forum activities) may be exercised over it. Therefore, the facts must be analyzed to determine whether Defendant has engaged in sufficient forum-related activities to subject it to the Court's limited jurisdiction (only over claims for relief arising from its forum contacts). *Kransco Manufacturing, Inc. v. Markwitz, supra* at 1378. That analysis utilizes a three-step approach:

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Abbott v. Second Judicial District Court,* 90 Nev. 321, 526 P.2d 75, 76 (1974); *see also Hunt v. Erie Ins. Group, supra* at 1247; *Kransco Manufacturing, Inc. v. Markwitz, supra* at 1378.

 The claims for relief set forth in the complaint both require Defendant's acts to have been intentional, rather than negligent. Where the alleged damages result from intentional conduct, a greater degree of interjection into the forum state is indicated. *Taubler v. Giraud,* 655 F.2d 991, 995 (9th Cir.1981). The employment of Nevada law firms by Defendant, first to bring the claim and delivery action in the State's courts and, second, to ensure that Freeport's payments, at least to the extent

of \$41,000 per month, came to Defendant, may be sufficient contacts to support jurisdiction over claims arising from those transactions. *See Toulouse v. Swanson,* 438 P.2d 578, 580–1 (Wn.1968). Also, the conducting of collection activities within the forum state invokes the protections and powers of that state's laws. *See Hawaii Credit Card Corp. v. Continental Credit Card Corp.,* 290 F.Supp. 848, 850 (D.Haw. 1968). Thus, the first step of the due process analysis is satisfied.

It is clear that Plaintiff's claims for relief arise from the purported harassment and pressuring of Freeport in Nevada by Defendant's agents. As a consequence, it is alleged, payments to Plaintiff were delayed and an expected contract was not received. Therefore, the second step also is fulfilled. *Id.* at 851; *see also Com'l Ins. Co. of Newark v. Pacific-Peru Const.,* 558 F.2d 948, 955 (9th Cir.1977).

In determining the reasonableness of exercising jurisdiction over a nonresident defendant, that is, the third step in the due process analysis, it is appropriate to focus on the foreseeable location of the injury. *Taubler v. Giraud, supra* at 995; *see also Calder v. Jones,* —— U.S. ——, 104 S.Ct. 1482, 1488, 79 L.Ed.2d 804 (1984); *Davis v. Eighth Judicial Dist. of State of Nev.,* 97 Nev. 332, 629 P.2d 1209, 1213 (1981). The U.S. Supreme Court has noted that a state has an especial interest in asserting jurisdiction over those who commit torts within its territory. This is motivated by the objectives of deterring wrongful conduct and protecting its residents. *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984). The *Calder* opinion, at page 1487, emphasizes the significance of the place where the brunt of the harm was suffered in deciding the propriety of exercising jurisdiction over an out-of-state defendant. Finally, both the contract between Plaintiff and Freeport and the anticipated contract between them, with which Defendant is accused of interfering, were to have been performed in Nevada. Such substantial connection with the forum state supports the reasonableness of requiring a nonresident defendant

to defend itself there. *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

IT IS, THEREFORE, HEREBY ORDERED that defendant Chase Commercial Corporation's motion to dismiss the action for lack of personal jurisdiction be, and the same hereby is, DENIED.