**PACIFIC CORNETTA, INC., Plaintiff,**

**v.**

**Charles C. JUNG, Hung Jung; Aalum Trading, Inc., a California corporation; Joy Toy Co., a California corporation; John J. Portz; International Wholesale Supply, Inc., an Arizona corporation; and Teams Iws, an Arizona corporation; Defendants.**

**Civ. No. 97–933–HA.**

United States District Court, D. Oregon.

Jan. 7, 2003.

differentiate between general and particular causation "an understandably easy trap to fall  into").

Louis D. Savage, Garvey Schubert & Barer, Portland, OR, for Plaintiff.

Mark H. Wagner, Hoffman Hart & Wagner LLP, Douglas R. Pahl, Perkins Coie, Portland, OR, Clint W. Feddersen, Law Offices of JS Kim & Associates Inc., Garden Grove, CA, for Defendants.

## AMENDED [1] OPINION AND ORDER

HAGGERTY, District Judge.

## I. Introduction

On September 11, 1997 this court entered a default judgment against Defendants Charles C. Jung, Hyon Jung, Aalum Trading, Inc. and Joy Toy Co. ("the Joy Toy defendants"). Those defendants have now brought a motion to set aside the judgment. After an evidentiary hearing on the matter and an opportunity for the filing of additional affidavits, the court resolves the motion as discussed below.

1. The court issues a modification of its previous ruling to correct a typographical error. This is

## II. Factual Background

Plaintiff Pacific Cornetta owns the federally registered trademark rights to the "Screaming Beekin," a sonic alarm which it manufactures for distribution at truck stops. In June of 1997, Pacific Cornetta filed a complaint with this court alleging that the defendants' sonic alarms, which are sold under the trade name "Up And At 'Em," infringed upon plaintiff's trade dress rights for the "Screaming Beekin." Specifically, Pacific Cornetta alleged that in order to cause consumer confusion, defendants designed and manufactured the "Up And At'em" so that its visual aspects closely resembled the "Screaming Beekin." Pacific Cornetta sought damages, attorney fees, and injunctive relief.

Pacific Cornetta settled with three defendants; however, the Joy Toy defendants failed to answer the complaint. In late June 1997, Samuel Tolbert, who was working for a lawyer in Garden Grove, California, contacted Pacific Cornetta's counsel at the time, Michael Purcell, about the complaint. When Tolbert asked Purcell whether Pacific Cornetta was willing to discuss a settlement, Purcell replied that settlement discussions would not proceed until the Joy Toy defendants retained local counsel. On July 29, 1997, the Joy Toy defendants still had not retained local counsel or filed an answer. Therefore, Pacific Cornetta moved for a default judgment. Purcell did not send a copy of the motion to the defendants. On August 5, 1997, Tolbert called Purcell asking for an extension of time to answer the complaint. Purcell refused and then followed up the conversation with a letter stating,

> To reiterate my statement to you of July 17, 1997, the plaintiff has not and will not consider allowing an extension of time unless and until we receive such a request from local counsel. While I understand that your client is attempting to hire local counsel, none has yet contacted us.

(Defendant's Ex. C.) On August 6, 1997, Tolbert faxed a letter to Purcell stating that the Joy Toy defendants would obtain local counsel "today." (Plaintiff's Ex. 8.) However, the

done *sua sponte* and not at the request of any party.

defendants never retained local counsel, and they never answered the complaint. In addition, although Tolbert told Purcell that he was a lawyer, Tolbert was not an attorney and was not licensed to practice law. He did, however, work for the same law firm as defendants' present counsel.

On September 11, 1997, this court granted the motion for a default, and on May 11, 1998, the court granted a permanent injunction against the Joy Toy defendants and entered a judgment in the amount of $273,300 in addition to costs and attorney fees. Defendants filed a motion to set aside the default on June 23, 2000. The defendants maintain that they were unaware of the default until early March of 2000 when they received a copy of a lien notice filed with the California Secretary of State. However, Purcell testified in the evidentiary hearing that a Joy Toy employee (who apparently was also a son of the Jung defendants) telephoned Purcell in December 1998 wanting to discuss the judgment. The caller asked if Purcell would negotiate an amount to satisfy the judgment. Purcell said that he would check with his client, but the caller did not contact Purcell again. The placement of telephone call is corroborated by circumstantial evidence. In December 1998, Pilot was in discussions with Pacific Cornetta about distributing the "Screaming Beacon," while Pilot was also having discussions with the defendants about distributing Up And At 'Em. Pacific Cornetta learned about Pilot's discussions with Joy Toy. Thus, it appears likely that the copy of the judgment sent to Pilot prompted the telephone call to Purcell.

The Jungs have submitted affidavits averring that they had no knowledge of the judgment before March 2000 and that they are not aware of anyone who called Purcell about the judgment in December 1998.[2] The validity of these affidavits is subject to question. For instance, although the Joy Toy defendants initially argued to the court that it had never sold its infringing "Up an 'At em product in Oregon, this proved untrue when Pacific Cornetta submitted evidence that a Pa-

cific Cornetta representative had purchased "Up And At 'Em" products at truck stops in Oregon. Moreover, a Joy Toy representative told Pacific Cornetta that he had never heard of Aalum Trading Company, but an investigator for Pacific Cornetta went to California and took a photograph of the sign on Joy Toys business which also bears the name "Aalum Trading." (Plaintiff's Ex. 13.) In addition, in a lawsuit in another venue, the Joy Toy defendants tried to quash a subpoena by arguing that it had not been served on Charles Jung but "a person matching the description of Chas. Jung." (Plaintiff's Ex. 11.) According to the motion, the person whose description matched that of Charles Jung happened to hand the subpoena to another person who gave it to his employer "Aalum Trading, Inc., [who] happen[ed] to be a co-defendant in the above-captioned matter, and Aalum Trading's attorneys happen[ed] to be the same attorneys representing Charles C. Jung with respect to the above-encaptioned [sic] litigation." (*Id.*) The court denied the motion. Although the Jungs had the opportunity to testify at the evidentiary hearing, they elected not to do so. An employee of Joy Toy, Henry Yun, did testify that at the hearing in this case; however, his testimony regarding the time at which the defendants knew of the judgment was contradictory. As a result, the court credits the testimony of Purcell and the circumstantial evidence offered by Pacific Cornetta over the affidavits and testimony of the Joy Toy defendants. Therefore, the court concludes that a representative of Joy Toy did call Purcell in December 1998 and that the Joy Toy defendants had notice of the judgment at that time.

## II. Discussion

The Joy Toy defendants have moved to set aside the default judgment. That motion requires examination of three issues: (1) whether they brought their motion in a timely manner after learning of the judgment; (2) whether Pacific was required to notify the defendants that it had filed a motion for a default judgment; and (3) whether personal

---

2. Even after they received the lien notice in March 2000, the Joy Toy defendants did not file a motion to set aside the default until late June of 2000, after they were ordered to appear for a judgment debtor examination.

jurisdiction existed over the defendants so that the judgment is valid.

## A. Timeliness of The Motion

■ A threshold issue is whether the motion to set aside the default was filed in a timely manner. FRCP 55(c) states, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Because a judgment has been entered on the default, FRCP 60(b) governs. That rule states, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) [mistake, fraud, or newly discovered evidence] not more that one year after the judgment order or proceeding was entered or taken.

FRCP 60(b). In this case, the defendants' motion relies on reason number (4), voidness. Therefore, the motion for relief from the judgment must have been filed within a "reasonable time" for it to be considered by the court. Whether the defendants acted within a reasonable time "depends on the reason for failing to act sooner and whether the nonmoving party has been prejudiced by the delay." *In re Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir.1989). Setting aside judgments after a lengthy delay requires a showing of "extraordinary circumstances." *United States v. Holtzman*, 762 F.2d 720 (9th Cir.1985).

■ As noted above, the court finds that the Joy Toy defendants had notice of the judgment in December of 1998, but waited until March of 2000 to seek relief from it. Defendants have offered no justification for the lengthy delay in moving to set aside the judgment, let alone "extraordinary reasons" for doing so. Therefore, the court finds that the delay was unreasonable.

## B. Pacific Cornetta's Failure to Notify Defendants of the Motion for Default

■ Next, the Joy Toy defendants argue that even if they delayed in moving to set aside the default, they are still entitled to do so because the default judgment was void on the ground that Pacific Cornetta never notified them that it had filed the request for a default. FRCP 55(b)(2) provides, "If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." Pacific argues that the Joy Toy defendants had not filed an appearance and therefore were not entitled to notice.

In *Wilson v. Moore and Assoc., Inc.*, 564 F.2d 366 (9th Cir.1977), the Ninth Circuit stated,

> No party in default is entitled to 55(b)(2) notice unless he has "appeared" in the action. The appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in fault has thereby demonstrated a clear purpose to defend the suit.

> The failure to provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for failure to do so. Although written notice is contemplated, it need not necessarily be in any particular form. "The major consideration is that the party is made aware that a default judgment may be entered against him."

*Id.* at 368–69 (quoting 11 Wright, Miller and Kane, *Federal Practice and Procedure* § 2868). The court distinguished the case from *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970), the benchmark case on the issue, which held that where parties have engaged in written and oral settlement discussions following service of the plaintiff, notice is required because the defendant's

settlement attempts demonstrated a clear purpose to defend the lawsuit. The Ninth Circuit in *Wilson* found that despite an exchange of letters between plaintiff's counsel and the defendant, sufficient informal contacts had not been made. The court noted that plaintiff's counsel had warned the defendant in writing that he should secure counsel and file an answer or an order for default would be obtained. *Id.* The *Wilson* court found that plaintiff's counsel had "provided actual, unqualified notice that delay in answering the complaint would result in default." *Id.* at 369. As a result, the defendant had not indicated an intention to defend the suit, and therefore, notice of the application for default was not required.

More recently, in *In re Roxford Foods, Inc.*, 12 F.3d 875, 880 (9th Cir.1993), the Ninth Circuit revisited the issue of when informal contacts will suffice. In that case the defendant had communicated with the defendant, a bankruptcy trustee, regarding the trustee's proposed retention of counsel. The district court found this insufficient to constitute an "appearance." The Ninth Circuit stated, "It is true that the facts above, if viewed in isolation, are not enough to indicate a clear intention to defend, such as to constitute an appearance to trigger Rule 55(b)(2) notice." *Id.* The court found, however, that notice was required because the lawsuit was almost identical to another lawsuit being litigated between the parties. *Id.*

In this case the Joy Toy defendants argue that they had attempted to settle the case by offering to agree to a cease and desist order similar to one entered into by other defendants in this case. In response, Pacific Cornetta notes that its counsel, Michael Purcell, had refused to negotiate a settlement until the Joy Toy defendants obtained local counsel. Purcell sent the Joy Toy representative in California a letter stating that an extension of time to answer the complaint would not be granted until local counsel had been retained. The Joy Toy defendants never did so, despite their indications to the contrary. It should also be noted that Tolbert is not an attorney, and although he was working for one, it is unclear whether an attorney ever had contact with Purcell. While Purcell may not have been completely candid with Tolbert

in his August 5 letter, he did warn Tolbert that he would not grant an extension until local counsel had been hired. It is difficult to infer a clear intent to defend the lawsuit when the Joy Toy defendants failed to obtain local counsel, despite Purcell's warning, and in fact had not even answered the complaint by the time judgment was entered on the default over a year later. This is not a case in which the defendants were lolled into believing they did not need to file an answer. As a result, under *Roxford* and *Wilson*, notice of the application for default was not required.

## C. Personal Jurisdiction

■ Finally, the Joy Toy defendants contend that the judgment is void for lack of personal jurisdiction. Jurisdiction over the defendants must exist at the time the default was entered. *See, e.g., Dennis Garberg & Assocs., Inc. v. Pack–Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir.1997). Oregon's long-arm statute provides for personal jurisdiction for acts committed outside of Oregon that have effects in the state. Jurisdiction exists "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant", provided, in addition, that at the time of the injury either:

D(1) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

D(2) Products, material, or things distributed processed, serviced, or manufactured by the defendants were used or consumed within this state in the ordinary course of trade.

ORCP 4D. In terms of due process, specific personal jurisdiction exists where (1) the defendants purposefully availed themselves of the privilege of conducting activities in the forum; (2) the plaintiff's claims arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998).

■ In their initial memorandum in support of the motion to set aside the default, the Joy Toy defendants stated that the "Up

And At 'Em" had never been sold in Oregon. Then Pacific Cornetta produced evidence of "Up And At 'Em" alarms purchased at truck stop in Oregon in April of 1997.[3] (Liu Aff., Exs. 4 and 5.) The alarm is stamped with the name "Aalum Trading, Inc." and was sold through Joy Toy, Inc. The Joy Toy defendants now claim that management was not aware of the shipment and that they had no idea the product would be sold in Oregon. The court rejects this argument. Pacific Cornetta has presented an affidavit from Bob Yon, a former buyer for Pilot Corporation, in which Yon avers that he first proposed to the Joy Toy defendants the idea of marketing a product similar to the "Screaming Beekin" ' in late 1996 or early 1997. Yon states that he told the defendants that the product was sold by a company in Oregon and that the defendants were fully aware that their own copy of the product would be marketed throughout the United States.[4] (Yon Aff. at ¶¶ 1–9.) Thus, the defendants knew that its product would likely be shipped to Oregon; they knew that an Oregon corporation would be harmed by their infringing product; and then that product was shipped to Oregon. Thus, the court finds that personal jurisdiction existed over Joy Toy and Alaum Trading at the time the default judgment was entered. *See Panavision,* 141 F.3d at 1320 (personal jurisdiction exists where trademark infringement primarily harms the plaintiff in the forum state and the defendant undertakes actions directed at the forum state).

As to the individual defendants, Charles and Hyon Jung, however, personal jurisdiction does not exist. The Jungs own both Aalum Trading, Inc. and Joy Toy, Inc. in full. Acts taken by the Jungs in their official capacities as representatives of the companies are insufficient to create a basis for jurisdiction. "A corporate officer who has contact with a forum only in the performance of his official duties is not subject to the personal jurisdiction of the courts in that forum." *Sidco Indus., Inc. v. Wimar Tahoe Corp.,* 768 F.Supp. 1343, 1348 (D.Or.1991). "Jurisdiction over an individual director or officer of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individual maintains contacts with the forum state that would subject him to the coverage of the state's long-arm statute and comport with due process." *Blackthorne v. Posner,* 883 F.Supp. 1443, 1449 (D.Or.1995) (quoting *Hoag v. Sweetwater Int'l,* 857 F.Supp. 1420, 1426 (D.Nev.1994)). Moreover, "[t]he fact that a defendant is the sole stockholder of a corporation is not sufficient to create personal jurisdiction over that defendant." *Sidco Indus.,* 768 F.Supp. at 1348. For example, in *Sher v. Johnson,* 911 F.2d 1357, 1365 (9th Cir.1990), the Ninth Circuit held that even though jurisdiction existed over a law firm, jurisdiction did not exist over the individual partners of the law firm because their actions were taken on behalf of the law firm and not as individuals. "[J]urisdiction depends only upon each defendant's relationship with the forum." *Id.* There is no evidence that the Jungs had a relationship with Oregon other than through their official actions on behalf of Aalum Trading, Inc. and Joy Toy, Inc. As a result, jurisdiction does not exist over the Jungs. Although the Jungs unreasonably delayed in moving against the judgment and the motion could be denied on that basis, the court notes that the individual defendants would, in all probability, be able to attack the judgment successfully in another jurisdiction should Pacific Cornetta choose to collect on it. In the interest of avoiding unnecessary litigation, the court exercises its discretion and voids the judgment against the individuals. The judgment against the corporations remains in effect.

## IV. Conclusion

Defendants' motion to set aside the judgment, (doc. 42), is granted in part and denied

---

**3.** Defendants argue that personal jurisdiction must have existed at the time of the filing of the complaint. The Ninth Circuit has indicated, however, that the court should instead "examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction." *Steel v. United States,* 813 F.2d 1545, 1549 (9th Cir.1987). Therefore, the court finds that the evidence that the "Up And At 'Em" was sold in Oregon after the filing of the complaint but before the entry of default is relevant.

**4.** Defendants' motion to strike the Yon affidavit and the supplemental Liu affidavit are without merit.

in part: The motion is granted with respect to Defendants Charles C. Jung and Hyon Jung, and the judgment is voided as to those defendants. The motion is denied with respect to Defendants Aalum Trading, Inc. and Joy Toy Co, and the judgment is valid as to those defendants. In addition, defendant's motion to strike the affidavit of Bob Yon and the supplemental affidavit of Ching Liu, (doc. 76), is denied.

**IT IS SO ORDERED.**